# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**HARRIS CORPORATION,**
                        **Plaintiff,**

-vs-                                        **Case No.  6:07-cv-796-Orl-31DAB**

**REMBRANDT TECHNOLOGIES, LP,**
                        **Defendant.**

_____

# ORDER

This matter comes before the Court on the Motion to Dismiss (Doc. 38) filed by the

Defendant, Rembrandt Technologies, LP ("Rembrandt"), the response (Doc. 41) filed by the

Plaintiff, Harris Corporation ("Harris"), and Rembrandt's reply (Doc.47).

**I.      Background**

This is a breach of contract and declaratory judgment case involving patent licenses.

Rembrandt holds the rights to, *inter alia*, U.S. Patent No. 5,243,627 (the "'627 Patent"), which

involves digital television signals.  According to Harris, as a prerequisite to participating in a

group that would establish technical standards for digital television, Rembrandt's predecessor in

interest agreed to license the '627 Patent on fair, reasonable, and nondiscriminatory ("FRAND")

terms.  Harris seeks a declaration that Rembrandt is bound by this (alleged) agreement and has

breached it.  Rembrandt seeks dismissal of Harris's First Amended Complaint (Doc. 37) on

various grounds, including a lack of personal jurisdiction over it.[1]

_____

[1]Harris filed the First Amended Complaint as a result of this Court's order (Doc. 30) granting
Rembrandt's first motion to dismiss for lack of personal jurisdiction.

## II.      Legal Standards

An assessment of personal jurisdiction requires a two-part analysis. *Venetian Salami
Co. v. Parthenais*, 554 So. 2d 499, 502 (Fla. 1989).  To determine whether this
Court has personal jurisdiction over non-resident defendants, the Court must first
determine whether there is a basis for jurisdiction under Florida's long-arm statute,
Fla. Stat. § 48.193.  *See* Fed. R. Civ.P.4(e)(1), (h), and (k); *Sculptchair, Inc. v.
Century Arts, Ltd.*, 94 F.3d 623, 626-27 (11th Cir. 1996).  If the Court finds that
personal jurisdiction exists under Florida's long-arm statute, the Court must then
consider whether the defendant's contacts with the state of Florida are sufficient to
satisfy the due process clause of the Fourteenth Amendment such that maintenance
of the suit in Florida does not offend traditional notions of fair play and substantial
justice.  *See International Shoe Co. v. Washington*, 326 U.S. 310, 315-17, 90 L. Ed.
95, 66 S. Ct. 154 (1945); *Cable/Home Communication Corp. v. Network
Productions, Inc.*, 902 F.2d 829, 855 (11th Cir. 1990); *Venetian Salami Co.*, 554
So. 2d at 502 (Fla. 1989).  If both prongs of the jurisdictional test are satisfied –
Florida's long-arm statute and the due process analysis – then the Court may
exercise personal jurisdiction over the nonresident defendant. *Madara v. Hall*, 916
F.2d 1510, 1516 (11th Cir. 1990).

*Nida Corp. v. Nida*, 118 F. Supp. 2d 1223, 1226 (M.D. Fla. 2000).

The Plaintiff has the initial burden of establishing a *prima facie* case of personal
jurisdiction over a nonresident defendant.  *Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1268-69
(11th Cir. 2002).  If the Plaintiff presents enough evidence to withstand a motion for directed
verdict, the *prima facie* case is established.  *Id.*  Where the Defendant submits affidavits to the
contrary, the burden traditionally shifts back to the plaintiff to produce evidence supporting
jurisdiction, unless those affidavits contain only conclusory assertions that the defendant is not
subject to jurisdiction.  *Id.*  When the plaintiff's complaint and supporting evidence conflict with
the defendant's affidavits, the court must construe all reasonable inferences in favor of the
plaintiff.  *Id.*

**III.     Analysis**

Rembrandt is a New Jersey limited partnership with its principal place of business in Pennsylvania.  In an affidavit, Rembrandt's secretary, Derek Wood ("Wood"), recites a list of items that suggest this Court cannot exercise personal jurisdiction over Rembrandt, such as that none of Rembrandt's partners is a resident of Florida and that Rembrandt has never engaged in business, sold products, maintained an office or advertised in Florida.  (Doc. 39).  Despite this, Harris argues that Rembrandt's contacts with the state are sufficient to support both general and specific jurisdiction under Florida's long-arm statute.  The Court examines these contentions in turn.

**A.     General Jurisdiction**

General jurisdiction arises from a defendant's contacts with the forum that are not directly related to the cause of action being litigated.  *Consolidated Development Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1292 (11th Cir. 2000).  Florida's long-arm statute permits a court to exercise general jurisdiction over a defendant "who is engaged in substantial and not isolated activity within this state ... whether or not the claim arises from that activity."  Fla. Stat. § 48.193(2).

Harris points to the following allegations within the First Amended Complaint in support of a finding that Rembrandt is engaged in "substantial and not isolated activity within this state":

> Rembrandt traveled to Florida in 2004 and 2005 to perform due diligence, negotiate, purchase and execute contracts related to the '627 Patent with Paradyne Corp., a Florida company that owned the patent; the agreement was signed and notarized in Florida; Rembrandt works with two Florida companies to assist with work related to its patent portfolio, including the '627 Patent; Rembrandt touts these arrangements on its website as essential to its business; Rembrandt solicits business from Florida patent owners, and its representatives have traveled to Florida at least three times between 2004-2006 to consult with them; Rembrandt has a website that allows potential clients to initiate a business relationship with Rembrandt through an e-mail link; the invention of the '627 Patent was by

Florida residents William Betts and Edward Zuranski; the agreement to offer licenses to the '627 Patent on FRAND terms was made and signed by the president of Florida-based AT&T IPM; Rembrandt's website states that it collaborates closely with those whose patents it acquires.  On information and belief, Rembrandt collaborates closely with the Florida-based inventors and assignors of the '627 Patent; Rembrandt's website states that it shares awards and settlements with those whose patents it acquires.  Therefore, Rembrandt is acting as an agent for its Florida assignees in pursuing awards and settlements in the multiple lawsuits Rembrandt has filed.

(Doc. 41 at 4-5).

     This list of allegations is insufficient to establish that Rembrandt is subject to general jurisdiction.  Taking a few trips to Florida to perform due diligence and then signing a contract there is not "substantial activity" in the state.  Without more, someone who merely "works with" Florida companies is not engaging in activity in Florida.[2]  There is no evidence that Rembrandt solicited business from Florida, outside of the allegation regarding its web site.  Operating a web site with nothing more than an email link does not constitute active solicitation of business.[3]  And

---

[2]Clearly, in a proper case, engaging in relationships with Florida residents would tend to support the existence of general jurisdiction over a nonresident defendant.  *See, e.g.*, *Garris v. Thomasville-Thomas County Humane Society, Inc.*, 941 So.2d 540, 547 (Fla. 1st DCA 2006) (finding general jurisdiction over South Georgia defendant which, *inter alia*, approved some North Florida veterinarians to spay and neuter newly adopted pets, and paid them directly for doing the sterilizations, dozens of which were performed in Florida every month).  But Harris's vague allegations that Rembrandt "works with" or "collaborates closely" with Florida residents does not rise to the level of the "broad interdependence between the Humane Society and an array of Floridians in various capacities" found to exist in *Garris.  Id.* at 547, n.12.  It should also be noted that the defendant in *Garris* conducted a great deal of activity in Florida and aimed at Florida residents, such as traveling to Tallahassee every month for years to display adoptable pets on a television show seen in both Florida and Georgia.  *Id.* at 546.  The Court's review of the opinion suggests that the relationship between the defendant Humane Society and the Florida veterinarians was a fairly minor item in the list of evidence supporting an assertion of general jurisdiction.

[3]*See, e.g.*, *Rexam Airspray, Inc. v. Arminak*, 471 F.Supp.2d 1292, 1301-02 (S.D.Fla. 2007) (noting that passive web sites, which merely make information available rather than allowing visitors to enter contracts, are not enough to establish general jurisdiction over web site owner).

the fact that Florida residents originally created the intellectual property at issue and that a Florida company once promised to license it does absolutely nothing to show that the entity that subsequently acquired the intellectual property has anything to do with Florida.

The only potentially weighty assertion Harris makes regarding general jurisdiction is that Rembrandt is acting as an agent for the Florida-based assignees of these patents – i.e. that Rembrandt has in essence sold a revenue-collecting service to a Florida-based company.  However, Harris bases this allegation on Rembrandt's alleged obligation to share any awards and settlements it derives from the patents.  Such an obligation, if it existed, would not establish an agency relationship.  A buyer does not become an agent of the seller simply because the purchase price is spread out over time.  There is nothing to suggest that the assignee is directing (or could direct) Rembrandt's conduct, one of the prerequisites for an agent/principal relationship.[4]

Moreover, the alleged obligation is based on information from Paradyne's 2004 Form 10K, in which the company stated it sold a group of patents to a third party for cash and a share of future royalties, including any arising from the third party's enforcement of the patents.  (Doc. 41 at 10). Harris assumes, and Rembrandt does not dispute, that Rembrandt is the "third party" referenced in the Form 10K.  However, Wood filed an affidavit stating that although the original patent sale agreement provided that Rembrandt would pay Paradyne a portion of any revenue generated by the patents, the agreement was subsequently amended to eliminate this obligation.  (Doc. 48 at 1). Wood further avers that Paradyne never received any revenue resulting from Rembrandt's patent

---

[4]"Essential to the existence of an actual agency relationship is (1) acknowledgment by the principal that the agent will act for him, (2) the agent's acceptance of the undertaking, and (3) control by the principal over the actions of the agent."  *Goldschmidt v. Holman*, 571 So.2d 422, 424 n.5 (Fla. 1990) (citing *Restatement (Second) of Agency* §1 (1957)).

enforcement and has no entitlement to it now.  (Doc. 48 at 1).  Harris offers nothing to rebut

Wood's affidavit.  Even if the continuing payment obligation were meaningful for jurisdictional

purposes, the Court must conclude it no longer exists.

All told then, the past few years' worth of "substantial activity" alleged by Harris that

actually touches Florida consists of a few trips to investigate patents, three trips to meet with a

consultant, signing a contract in Florida, and operating a web site that would allow a Florida

resident to send an email to the defendant.  This is insufficient to establish "substantial and not

isolated activity within this state," as required by Fla. Stat. § 48.193(2).

**B.    Specific Jurisdiction**

In contrast to general jurisdiction, specific jurisdiction arises out of a party's activities in the

forum that are alleged in the complaint.  *McGow v. McCurry*, 412 F.3d 1207, 1214 n.3 (11th Cir.

2005).  Harris contends that Rembrandt is subject to specific jurisdiction under Fla. Stat. §

48.193(1)(a) for "[o]perating, conducting, engaging in, or carrying on a business or business

venture in this state or having an office or agency in this state."  If satisfied, this subsection confers

"specific" personal jurisdiction for any cause of action "arising from" the activities within the state.

 Fla. Stat.§ 48.193(1).  Although the term "arising from" is somewhat broader than the concept of

proximate cause, under Florida law there must nevertheless be some direct affiliation, nexus, or

substantial connection between the cause of action and the activities within the state.  *Sun Trust

Bank v. Sun International Hotels, Ltd.*, 184 F.Supp.2d 1246, 1269 (S.D.Fla. 2001) (citing *Citicorp

Ins. Brokers (Marine) Ltd. v. J.R. Charman*, 635 So. 2d 79, 81 (Fla. 1st DCA 1994)).  The nexus

requirement is often described as "connexity," and must be met before specific jurisdiction will

attach.  *Id.* (citing *Bloom v. A.H. Pond Co.*, 519 F.Supp. 1162, 1168 (S.D.Fla. 1981).

Harris contends that the "center of gravity" of this suit and Rembrandt's "licensing business model" is Florida, because Rembrandt's predecessor that allegedly promised to license the patent, the patent itself, the string of owners of the patent, and the consulting firms are all from Florida. Unfortunately for Harris, none of this suggests that Rembrandt is engaging in business in Florida. Harris also points out that Rembrandt "reached out" to negotiate with a Florida resident, Paradyne, to acquire the '627 Patent and made four trips in three years related to this matter, arguing that without Florida contact, this suit would not exist.  The latter statement is debateable; however even if it were true, that is not the applicable test.  One "reaching out" and four trips in three years, without more, are not enough to find that Rembrandt is operating or conducting business in this state.  And even if it were, it is doubtful that the instant suit, though related to Rembrandt's conducting business with this state, "arises" out of it.  So far as Harris would be concerned, it is merely fortuitous that Rembrandt happened to purchase the patent from a Florida company.

In the alternative, Harris argues that Rembrandt is subject to specific jurisdiction pursuant to Fla. Stat. § 48.193(1)(g) for "[b]reaching a contract in this state by failing to perform acts required by the contract to be performed in this state."  Specifically, Harris contends that Rembrandt was obligated to provide it with a patent license in Florida, which it failed to do.  (Doc. 41 at 9).  However, the United States Court of Appeals for the Eleventh Circuit has interpreted Fla. Stat. § 48.193(1)(g) to mean "that there must exist a duty to perform an act *in Florida*; a contractual duty to tender performance to a Florida resident is not in itself sufficient to satisfy the statute."  *Posner v. Essex Ins. Co., Ltd.,* 178 F.3d 1209, 1218 (11th Cir. 1999).  Harris does not allege that the license agreement required the physical delivery, in Florida, of a piece of paper memorializing the patent license, or anything of that nature.  Though not precisely on all fours,

Rembrandt's alleged obligation to license  the '627 Patent to Harris is analogous to the "duty to tender performance to a Florida resident" found insufficient in *Posner*.

## IV.     Conclusion

Harris has failed to establish that Rembrandt is subject to either general or specific jurisdiction under the Florida long-arm statute.  This failure makes it unnecessary for the Court to consider the remainder of Rembrandt's motion.  In consideration of the foregoing, it is hereby

**ORDERED AND ADJUDGED** that the Motion to Dismiss (Doc. 38) filed by the Defendant, Rembrandt Technologies, LP, is **GRANTED**, and the First Amended Complaint (Doc. 37) is **DISMISSED** for lack of jurisdiction.


**DONE** and **ORDERED** in Chambers, Orlando, Florida on September 28, 2007.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party